IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v ) | CR. NO. 1:16cr131-WKW |
| ) | (WO) |
| DAMION GREEN ) | |
| DENISHA BLANDENBURG ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

On April 27, 2016, the defendants, Damion Green ("Green"), Denisha Blandenburg ("Blandenburg") and Kenyon Smith ("Smith"), were charged in a multi-count indictment with conspiracy to distribute and possession with intent to distribute controlled substances,[1] conspiracy to import a controlled substance, and possession with the intent to distribute controlled substances, all in violation of 21 U.S.C. § 841 and § 846. They were also charged in multiple counts with knowingly and intentionally using a communication facility, a cellular telephone, to cause and facilitate the conspiracy, in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2, and with money laundering and money laundering conspiracy in violation of 18 U.S.C. § 1956. They were changed with conspiracy to maintain drug-involved premises for

---

[1] The defendants were charged with conspiracy to distribute and possess "AB-FUBINACA, AB-CHMINACA, and 5F-PB-22, Schedule I Controlled Substances" commonly referred to as synthetic marijuana or spice. (Doc. # 13)

the purpose of manufacturing, storing and distributing controlled substances in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Finally, the defendants were charged with possessing a firearm during and in relation to a drug-trafficking crime in violation of 18 U.S.C. § 924. *See* Doc. # 13.

On February 5, 2018, Green filed a motion to suppress (doc. # 151), and on February 6, 2018, Blandenburg filed a very similar motion (doc. # 160). The motions are not models of clarity, but it appears that the defendants are seeking to suppress all evidence seized as the results of warrants authorizing the installation of GPS tracking devices on vehicles driven by Blandenburg, search warrants issued by three separate courts, and all evidence obtained from telephone calls made by Green to Blandenburg while he was incarcerated in the Houston County Jail. *See* Docs. # 151 & 160. Green and Blandenburg assert that the state and federal search warrants did not establish probable cause because (1) the information about the confidential informants was sparse and vague and failed to establish their reliability; (2) the information in the affidavits "was too vague to justify installation of Global Positioning System (GPS) devices on the vehicles;" and (3) the affidavits were "sham" affidavits because of the similarities in the warrants. (*Id.*). The defendants also argue that various state agents somehow conspired to arrest and incarcerate Green so they could listen to his telephone conversations with Blandenburg. Both

defendants assert that this scheme violated Green's due process rights.[2]

The court held an evidentiary hearing on the motions on April 23, 2018. Based on the evidence presented to the court and argument of the parties, the court concludes that the motions to suppress are due to be denied.

## II.  FACTS

**A.  The 2015 Traffic Stop of Defendant Green.**

In 2012, Green and Blandenburg were arrested in Houston County, Alabama, and charged with drug trafficking. Dothan City police officer Thomas Davis ("Davis") was involved in the 2012 investigation of Green and Blandenburg that resulted in this arrest. As part of the 2012 investigation, a search warrant was executed at 1004 Southland Drive in Dothan, Alabama, a residence shared by Green and Blandenburg. Cocaine, marijuana and ecstasy were seized from the residence. Blandenburg and Green were charged with drug trafficking offenses and released on bond.[3] Eventually Green entered a guilty plea to drug trafficking and possession of controlled substances. He was continued on bond pending

---

[2] In their briefs, both defendants requested a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to challenge the adequacy of the search warrants. *See* Doc. # 151 at 22-23 and Doc. # 160 at 21-22. A defendant is entitled to a hearing pursuant to *Franks, supra*, when the defendant has made a substantial showing that officers used misrepresentations or concealments constituting intentionally or recklessly made falsehoods to secure the search warrants. Neither Green nor Blandenburg point the court to any allegedly false statements in the affidavits. Regardless, the defendants did not file a motion requesting a *Franks* hearing so nothing in that regard is properly before the court.

[3] Green was released on bond on June 6, 2014.

3

sentencing.[4]  During this time, Blandenburg was also released on bond pending her sentencing.[5]

On February 18, 2015, while still on bond awaiting sentencing, Green was observed by Houston County Sheriff's Investigator Phillip Small ("Small") driving a Chevrolet Malibu in Dothan, Alabama.  Small recognized the defendant and was aware that Green did not possess a valid driver's license, but Small sought confirmation of the status of Green's license. While Small was waiting for confirmation, he followed Green in an unmarked police vehicle from a distance of two to three car lengths.  Small observed Green throw a blunt from the car window and smelled the odor of burnt marijuana coming from the vehicle.

When Small received confirmation of the status of Green's license, he initiated a traffic stop based on Green's driving without a valid driver's license.[6] When Small approached the driver's side of the vehicle, he smelled the odor of burnt marijuana coming from the vehicle.  Small asked Green to exit the vehicle. Based on the smell of marijuana, Small searched the vehicle and found loose green marijuana on the console and on the driver's side floor board.

---

[4] Green was sentenced on June 25, 2015 to a twenty year term of imprisonment.
[5] Blandenburg had previously entered a guilty plea to drug trafficking and was eventually sentenced to 15 years imprisonment
[6] The defendant does not dispute that at the time he was stopped, he did not have a valid driver's license.  Moreover, at the evidentiary hearing on the motion to suppress, Green's counsel admitted that he was not challenging the validity of the traffic stop.

Green was arrested for possession of marijuana, second degree.[7] Although Green was initially eligible for a bond, five days after his arrest, Green was placed on a "no bond" status.[8]

### B. The Facts Establishing Probable Cause for the Warrants.

What follows in this section is a recitation of the facts gleaned from the affidavits supporting the issuance of the challenged warrants. On February 5, 2015, Officer Davis arrested Devonta Daniels for trafficking synthetic marijuana. (Doc. # 175, Ex. 1). During questioning, Daniels told Davis that a black male named "Nine" was bringing large quantities of synthetic marijuana into Dothan. Daniels described "Nine" as "stocky with light skin and . . . numerous tattoos covering most of his upper body."[9] (*Id*.) Daniels identified Green from a photograph. (*Id*). Davis testified at the evidentiary hearing that Daniels was not made any promises of leniency for his statement.

Also, on February 15, 2015, investigator Robert Cole spoke with a confidential informant who advised that "Nine was supplying most of Dothan, Alabama with synthetic marijuana." (*Id*.). Cole provided this information to Davis. Thus, Davis had received information about Green and his involvement in

---

[7] Because Green had a prior possession of marijuana second degree charge, the misdemeanor charge was dismissed and Green was subsequently charged with felony possession of marijuana.
[8] It is undisputed that Green was on bond awaiting sentencing at the time he was arrested.
[9] During the evidentiary hearing on the motion to suppress, the government asked the court to take judicial notice of the fact that Green had "Nine" tattooed on his neck. The court did, and Green does.

distributing synthetic marijuana prior to Small's arrest of Green. Based on the information from the other investigators, coupled with Green's arrest, Davis pursued an investigation into Green's and Blandenburg's activities.

On February 24, 2015, Davis contacted United States Postal Inspector James Tynan ("Tynan") and asked if packages were being shipped to 1100 Meadowlane Drive in Dothan, Alabama.[10] Tynan informed Davis that several months earlier, he had learned that packages were being shipped to that address from China.[11] (*Id.*) Tynan further advised Davis that "within the last several weeks [Tynan] noticed approximately one package being shipped to the residence per week." (*Id.*)

On February 28, 2015, investigator Matthew Krabbe ("Krabbe") arrested Rakim Jackson ("Jackson") for unlawful possession of synthetic marijuana. At that time, Jackson told Krabbe that "Nine and his old lady" were supplying synthetic marijuana in Dothan, Alabama. (*Id*). Krabbe contacted Davis and relayed this information to him.

Based on the information he had received, on March 6, 2015, Davis began surveilling the Meadowlane Drive address. (*Id.*) Davis observed a red Chevrolet

---

[10] In December 2014 a confidential informant told Davis that packages smelling of marijuana were delivered to the Meadowlane address. Utilities at this address were in Blandenburg's name.

[11] This information was important because, as stated in Davis' affidavit (Doc. # 175-1 at 6) he had investigated individuals who were purchasing synthetic THC chemical from China. "Most commonly, individuals are placing orders for the synthetic THC chemical online. The currency for the transaction is commonly paid via a money order/transfer from the purchaser. Once the synthetic THC chemical reaches the hands of the purchaser, it is mixed with a non-soluble item, i.e. Acetone and sprayed onto a leafy substance, most commonly Damiana leaf." *Id.*

6

Malibu vehicle at the residence, and when the vehicle left the house, Davis followed it. The vehicle stopped at a local Burger King restaurant, and the driver and passenger got out. Eventually, the passenger of the Malibu got into a white Chevrolet Tahoe at the Burger King. Krabbe and another officer conducted a traffic stop on the Tahoe. Blandenburg was driving the Tahoe. The officers could smell marijuana coming from the vehicle.[12] The vehicle was registered to Green. Blandenburg was cooperative but did not answer any questions. She and the passenger were released.

On March 6, 2015, Davis and Krabbe listened to telephone calls made by Green from the Houston County jail to Blandenburg and an unknown male. Blandenburg informed Green that she had been stopped by police, and that she had been smoking marijuana in the car. Green advised Blandenburg that the police were "essentially on to them," and directed her to "close up" and "relocate." (*Id*.) On March 17, 2015, officers conducted surveillance on Blandenburg driving a red 2013 Chevrolet Camaro which was registered to her. During this surveillance the officers came to believe that Blandenburg was attempting to elude surveillance based on the way in which she was driving.

Davis listened to more than forty (40) jail calls from Green to Blandenburg

---

[12] During a search of Blandenburg's vehicle officers found a receipt for payment from a real estate company in Dothan, Alabama for property located at 210 Superior Drive. (Doc. # 175-1 at 7)

which led Davis to believe that Blandenburg played a significant role in Green's drug trafficking organization and that Blandenburg and Green were discussing criminal activity during the calls. In addition, Postal Inspector Tynan informed Davis that Customs and Border Protection seized a package addressed to 210 Superior Drive in Dothan, Alabama which contained approximately two (2) kilograms of synthetic marijuana.

    On the basis of the foregoing information, Davis presented a search warrant and affidavit to Houston County Circuit Judge Benjamin Lewis requesting authorization for the placement of a Global Positioning Satellite (GPS) tracking device on Blandenburg's red Chevrolet Camaro.  (*Id*.)  Davis swore that the information in the affidavit was true, and Judge Lewis issued the warrant based on Davis' affidavit at 9:44 p.m. on May 12, 2015.

    After the initial search warrant authorizing placement of the GPS device on the Camaro, Davis went back to Judge Lewis on four occasions to get permission to put GPS tracking devices on other vehicles associated with Blandenburg.  On May 22, 2015, Davis presented a search warrant and affidavit to Judge Lewis requesting authorization to place a GPS tracking device on a 2015 Silver Chevrolet Malibu.  (Doc. #175, Ex. 2).  In his affidavit in support of the search warrant, Davis recounted facts contained in his first affidavit but also contained additional facts gathered from the first search warrant. For example, Davis was able to track

Blandenburg to a mini storage unit as well as the 210 Superior Drive address. Davis was able to coordinate Blandenburg's movements with telephone conversations with Green regarding receiving packages and moving material to storage units. (*Id*.)  Based on the information contained in the affidavit which Davis swore was true, Judge Lewis issued the warrant for the Chevrolet Malibu at 4:11 p.m. on May 22, 2015.  On May 27, 2015, Judge Lewis issued a search warrant for a purple Infiniti SUV.  (Doc. # 175, Ex. 15)  On June 1, 2015, Judge Lewis authorized placement of a GPS tracking device on a white Toyota Avalon registered to Blandenburg.  (Doc. # 175, Ex. 18).  Each affidavit presented to Judge Lewis in conjunction with the search warrant contained the information contained in the first search warrant but subsequent affidavits built on the initial affidavit, adding additional information discovered during the investigation.

     In addition to the four GPS tracking device search warrants, Drug Enforcement Administration Agent Brian Todd ("Todd") sought search warrants from this court to search the following locations: (1) Unit 511, Dothan Mini Storage South, 618 Hodgesville Road, Dothan, Alabama  (doc. # 175, Ex. 3); (2) a mobile home located at 2705 Cumbie Road, Lot #9, Newton, Alabama (*id*., Ex. 4); Unit 12, South Oates Mini Storage, 903 Haven Drive, Dothan, Alabama (*id.*, Ex. 5); Unit 740, Storage Master - South Dothan, 353 West Inez Road, Dothan, Alabama (*id.*, Ex. 6); and Unit 480B, Dothan Mini Storage West, 2717 Ross Clark

Circle, Dothan, Alabama (*id.*, Ex. 7).  Todd submitted detailed affidavits describing the investigation in Houston County including Green and Blandenburg's earlier arrests, the information provided by Davis, Krabbe, and Tynan, Green's telephone calls from the jail to Blandenburg, and Blandenburg's activities gleaned from the GPS tracking devices and surveillance of her movements at and around storage units in Dothan, Alabama.  Based on the information contained in the affidavits which Todd swore was true, United States Magistrate Judge Terry Moorer issued the requested search warrants.

The searches of the storage units resulted in the seizure of approximately 500 pounds of smokeable synthetic marijuana, $265,195 in United States currency, a firearm and the dismantlement of a synthetic marijuana processing location. (Doc. # 175, Ex. 8).  After the search warrants were executed, Blandenburg fled to her mother's home located at 100 Winston Way in Hampton, Georgia. (*Id.*)

On February 11, 2016 at 4:09 p.m., Judge Russell Vineyard, a United States Magistrate Judge for the United States District Court for the Northern District of Georgia, issued a search warrant authorizing the placement of GPS tracking devices on a purple 2009 Infinity FX35 and a red 2013 Chevrolet Camaro, both vehicles registered to Blandenburg. (Doc. # 175, Exs. 8 & 9).   Based on the information contained in the affidavits submitted by Davis, Judge Vineyard issued

the requested warrants. (*Id*., Ex. 8 & 9).

Thereafter on March 11, 2016, Judge Catherine Salinas, a United States Magistrate Judge for the United States District Court for the Northern District of Georgia, issued search warrants for Blandenburg's mother's residence 100 Winston Way, Hampton, Georgia (*id*., Ex. 10); a residence located at 11316 Michelle Way, Hampton, Georgia (*id*., Ex. 11); Unit #45, Alvaton Self Storage, 24574 GA-85, Gay, Georgia (*id*., Ex. 12); Unit #B-3, Stor-Ur-Stuff, 11754 Hastings Bridge Road, Hampton, Georgia (*id*., Ex. 13); and Unit # B-6, Lovejoy Self Storage, 2200 Lovejoy Road, Lovejoy, Alabama (*id*., Ex. 14). In support of the search warrants, Davis provided a detailed affidavit describing his investigation of Green and Blandenburg beginning with Green's arrest in 2015. The affidavit chronicles the activities of law enforcement in Dothan, Alabama, recounting the execution of the search warrants and delineating the contraband found and seized, and the actions of Green and Blandenburg. On April 27, 2016, the defendants were indicted in this court as explained above.

## III. DISCUSSION

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. AMEND. IV.[13] "The Amendment protects persons against

---

[13] Specifically, the Fourth Amendment provides that "[]he right of the people to be secure in their

unreasonable searches of "their persons [and] houses." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998). The Fourth Amendment further provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Probable cause to support a search warrant exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999). To find probable cause, a judge is "entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." *United States v. Ayers*, 924 F.2d 1468 (9th Cir. 1991), *quoting United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986). In weighing the evidence, the issuing judge may rely on the conclusions of experienced law enforcement officers. *Id.* Evidence seized as the result of an illegal search may not be used by the government in a subsequent criminal prosecution. *United States v. Martin*, 297 F.3d 1308, 1312 (11th Cir. 2002).

### A. Search Warrants

In their motions to suppress, the defendants assert that the affidavits in

---

persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

support of the search warrants do not establish probable cause because (1) the affidavits contain no information about the veracity of the confidential informants; (2) the information in the affidavits "was too vague to justify installation of Global Positioning System (GPS) devices on the vehicles;" and (3) the affidavits were "sham" affidavits because of the similarities in the warrants. (Docs. # 151 & 160). The defendants challenge all search warrants issued during the course of the investigation in this case.

A court reviewing the issuance of a search warrant by a United States Magistrate Judge or state court judge is not to conduct a de novo probable cause determination, but is merely to decide whether the evidence viewed as a whole provided a "substantial

basis" for the finding of probable cause at the time the warrant was issued. *Massachusetts v. Upton*, 466 U.S. 727, 732-33 (1984) (per curiam); *Gates*, 462 U.S. at 236.

> The task of the issuing [judge] is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the [judge] had a "substantial basis for . . . conclud[ing]" that probable cause existed. *Jones v. United States, supra,* 362 U.S., at 271, 80 S.Ct., at 736.

*Gates,* 462 U.S. at 238-239. "The nexus between the objects to be seized and the

premises searched can be established from the particular circumstances involved and need not rest on direct observation." *United States v. Jenkins*, 901 F.2d 1075, 1080 (11th Cir. 1990) (quoting *United States v. Lockett*, 674 F.2d 843, 846 (11th Cir. 1982). Moreover, probable cause "is a fluid concept – turning on the assessment of probabilities in particular factual contexts[.]" *Brundidge*, 170 F.3d at 1352. Suppression is only warranted if the affidavit supporting the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Brown v. Illinois*, 422 U.S. 590, 610-11 (1975). After careful consideration, the court has no trouble concluding that all the warrants issued in this case including the warrants to authorize GPS tracking devices were supported by probable cause.

Each of the judges who issued the contested warrants had before them affidavits of Investigator Davis or DEA agent Todd, each of whom explained in great and increasing detail the circumstances and investigation into Green and Blandenburg's criminal activities. Far from being "sham" affidavits, the affidavits contain information describing the defendants' criminal histories in Dothan, Alabama, and their involvement in drug trafficking activities involving marijuana. The affidavits describe multiple telephone calls between Green and Blandenburg discussing drug trafficking and criminal activities. Davis details information he received from a variety of sources including confidential informants, the United

States Postal Inspector and Green and Blandenburg themselves.[14] With the filing of each affidavit, new information is provided to the judge. A comparison of the affidavits shows the progress of the investigation with each addition of new facts. The court must not, and will not, dissect the affidavits to attack selected facts. Rather,

> We must also be mindful that probable cause is the sum total of layers of information and the synthesis of what police have heard, what they know, and what they observed as trained officers. We weigh not individual layers but the 'laminated' total.

*United States v. Edwards*, 577 F.2d 883, 895 (5th Cir. 1978) (en banc).[15] *See also United States v. Bascaro*, 742 F.2d 1335, 1345 (11th Cir. 1984) *abrogated on other grounds by United States v. Lewis*, 492 F.3d 1219, 1221-22 (11th Cir. 2007) ("While no one item of information recounted above might have been sufficient standing alone to justify a wiretap order, taken together, they amply set out probable cause."). Based on the exhaustive delineation of the facts of this case, the court concludes that the affidavits contained information sufficient to establish a

---

[14] It is not at all clear whether the defendants are challenging officers' reliance on their experience to interpret the telephone calls between Green and Blandenburg. To the extent that they are, an issuing judge "may consider an agent's training and experience to offer opinions as to methods utilized by drug traffickers and, based on the same, consider an agent's interpretation of code words and language in determining whether a probable cause exists to authorize a search warrant." *United States v. Flores*, 2007 WL 2904109, at *39 (N.D.Ga. Sept.27, 2007) (citing *United States v. Garcia*, 447 F.3d 1327, 1335 (11th Cir.2006)); *see also United States v. Maddox*, 2010 WL 3210743, at *2 (E.D.Tenn. June 22, 2010) (finding that it was appropriate for an issuing judge to rely upon an experience agent to interpret drug dealer code language).

[15] *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

substantial basis for allowing the issuing judge to find probable cause.  In short, the court concludes that the affidavits sufficiently demonstrate that probable cause existed for all the searches, and Green and Blandenburg's motions to suppress should be denied.

Green and Blandenburg do argue that the affidavits fail to sufficiently establish the reliability of the confidential sources.  If the confidential informant information was the only information in the affidavits, they might have a viable argument.  However, the defendants ignore the multitude of other facts contained in the affidavits that establish probable cause for the issuances of the search warrants.  Even if the court were to disregard the information provided by the confidential informants, there are sufficient facts in the affidavits to support a finding of probable cause.

### B.  Scheme to Arrest Green

The defendants also argue that state agents somehow conspired to arrest and incarcerate Green so they could listen to his telephone conversations with Blandenburg.  Both defendants assert that this scheme violated Green's due process rights, and argue that evidence seized as a result of listening to the phone calls should be suppressed.[16]  The defendants point the court to no case law in

---

[16] At the evidentiary hearing, Green raised for the first time an argument that being denied bond in his state case violated his constitutional right to bond.  Green's counsel conceded at the evidentiary hearing that at no time did his state court counsel file a motion seeking bond.

support of this extraordinary proposition. More importantly, however, they presented no evidence to support their allegation of a scheme. Their argument that law enforcement officers in Houston County conspired to arrest Green for the purpose of listening to his telephone calls while he was in jail is pure speculation.[17]

As noted, Green does not dispute the validity of the traffic stop which led to his arrest and incarceration. His incarceration for what at first was charged as a misdemeanor did not violate his constitutional rights. *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001). Thus, even if Green's arrest and detention was part of a plan to obtain evidence from his jail calls, he has no basis to complain. In analogous circumstances involving involuntary confessions due to police trickery, the law in the Eleventh Circuit "is clear, that the police's use of a trick alone will not render a confession involuntary." *United States v. Castaneda-Castaneda*, 729 F.2d 1360, 1362-63 (11th Cir.1984). *See also United States v. Middleton*, 245 F. App'x 867, 872 (11th Cir. 2007) (per curiam) (unpublished) (citation omitted) (noting that a "single interrogation trick" of lying by the police "does not automatically render [the statement] involuntary"). There must be *other aggravating* circumstances. *Castaneda-Castaneda, supra.* (emphasis added). Green has presented no evidence of any aggravating circumstances that would

---

[17] There was no dispute that the Houston County Jail has signs posted advising the inmates that telephone calls are recorded and monitored.

persuade the court that the police tactics in this case rise to a level that would require suppression.  Even if Green had been improperly arrested (which he was not), the police in no way tricked him into making over 40 telephone calls from the jail to Blandenburg.

### IV.  CONCLUSION

For the reasons as stated, this court concludes that the defendants' constitutional rights were not violated, and it is the RECOMMENDATION of the Magistrate Judge that the defendants' motions to suppress (docs. # 151 & 160) be DENIED. It is further

ORDERED that the parties shall file any objections to the said Recommendation on or before **May 14, 2018.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall

bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 30th day of April, 2018.

/s/ Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE